IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TODD TYLER MAST, | : | CIVIL ACTION |
| Plaintiff, | : | |
| v. | : | |
| | : | NO. 18-4300 |
| NANCY A. BERRYHILL, | : | |
| Acting Commissioner of | : | |
| Social Security, | : | |
| Defendant. | : | |

## **MEMORANDUM OPINION**

Todd Tyler Mast ("Mast" or "Plaintiff") seeks review, pursuant to 42 U.S.C. § 405(g), of the Commissioner of Social Security's ("Commissioner") decision denying his claim for Disability Insurance Benefits ("DIB").[1] For the reasons that follow, Mast's Request for Review will be DENIED.

**I.    PROCEDURAL HISTORY AND BACKGROUND**

Mast was born on February 20, 1966. R. at 21.[2] He has at least a high school education and is able to communicate in English. Id. He has previous work experience as a hand packager and casting machine operator. Id. On August 14, 2015, Mast protectively filed an application for DIB pursuant to Title II of the Social Security Act. Id. at 15. He alleged that he had become disabled on November 3, 2014 due to chronic back pain, flesh eating disease, new herniation,

---

[1] In accordance with 28 U.S.C. § 636(c), the parties voluntarily consented to have the undersigned United States Magistrate Judge conduct proceedings in this case, including the entry of final judgment. See Doc. Nos. 3, 9.

[2] Citations to the administrative record will be indicated by "R." followed by the page number.

spinal fusion, diabetes, and "[th]yroid." Id. at 56. His application was initially denied on December 15, 2015. Id. at 15. Mast then filed a written request for a hearing on February 8, 2016. Id. A hearing before an Administrative Law Judge ("ALJ") was held on September 13, 2017. Id. On December 5, 2017, the ALJ issued an opinion finding that Mast was not disabled. Id. at 12-26. Mast filed a timely appeal with the Appeals Council on January 24, 2018. Id. at 136-38. On July 31, 2018, the Appeals Council denied Mast's request for review, thereby affirming the decision of the ALJ as the final decision of the Commissioner. Id. at 1-6. Mast then commenced this action in federal court.

## II.     THE ALJ'S DECISION

To prove disability, a claimant must demonstrate some medically determinable basis for a physical or mental impairment that prevents him or her from engaging in any substantial gainful activity for a 12-month period. 42 U.S.C. § 423(d)(1). As explained in the applicable agency regulation, each case is evaluated by the Commissioner according to a five-step process:

> (i) At the first step, we consider your work activity, if any. If you are doing substantial gainful activity, we will find that you are not disabled. (ii) At the second step, we consider the medical severity of your impairment(s). If you do not have a severe medically determinable physical or mental impairment that meets the duration requirement in § 416.909, or a combination of impairments that is severe and meets the duration requirement, we will find that you are not disabled. (iii) At the third step, we also consider the medical severity of your impairment(s). If you have an impairment(s) that meets or equals one of our listings in appendix 1 to subpart P of part 404 of this chapter and meets the duration requirement, we will find that you are disabled. (iv) At the fourth step, we consider our assessment of your residual functional capacity and your past relevant work. If you can still do your past relevant work, we will find that you are not disabled. (v) At the fifth and last step, we consider our assessment of your residual functional capacity and your age, education, and work experience to see if you can make an adjustment to other work. If you can make an adjustment to other work, we will find that you are not disabled. If you cannot make an adjustment to other work, we will find that you are disabled.

20 C.F.R. § 404.1520 (references to other regulations omitted).

2

In her decision, the ALJ found that Mast suffered from the following severe impairments: disorders of the spine, obesity, necrotizing fasciitis, and diabetes mellitus. R. at 17. The ALJ did not find that any impairment, or combination of impairments, met or medically equaled a listed impairment and determined that Mast retained the residual functional capacity ("RFC") to:

> Perform light work as defined in 20 CFR 404.1567(b) with occasional balancing and stooping, no climbing ladders, occasionally climbing ramps and stairs, no unprotected heights, no kneeling or crawling, and should alternate from standing to sitting as needed throughout the day to remain productive.

Id. at 18. Based on this RFC determination, the ALJ concluded that Mast was able to perform his past relevant work as a hand packager. Id. at 21. In the alternative, relying on the vocational expert ("VE") who appeared at the hearing, the ALJ found that there were also jobs that existed in significant numbers in the national economy that Mast could perform, such as bench assembler, cashier, and visual inspector. Id. at 22. Accordingly, the ALJ concluded that Mast was not disabled. Id.

## III.  DISCUSSION

Mast argues that the ALJ erred in failing to give the "opinions and findings" of his treating pain management physician, Dr. Robert Salvage of Clinical Pain Management Associates, "adequate weight." Pl.'s Br. (Doc. No. 15) at 5-6. This contention is without merit.

The role of the court in reviewing an administrative decision denying benefits in a Social Security matter under 42 U.S.C. § 405(g) is "limited to determining whether the Commissioner applied the correct legal standards and whether the record, as a whole, contains substantial evidence to support the Commissioner's findings of fact." Schwartz v. Halter, 134 F. Supp. 2d 640, 647 (E.D. Pa. 2001); see also Richardson v. Perales, 402 U.S. 389, 401 (1971); Doak v. Heckler, 790 F.2d 26, 28 (3d Cir. 1986); Newhouse v. Heckler, 753 F.2d 283, 285 (3d Cir. 1985). Substantial evidence is a deferential standard of review. See Jones v. Barnhart, 364

3

F.3d 501, 503 (3d Cir. 2004). It is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005) (internal quotation marks omitted); see also Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999) (Substantial evidence "'does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" (quoting Pierce v. Underwood, 487 U.S. 552, 564-65 (1988))). A reviewing court may not undertake a de novo review of the Commissioner's decision in order to reweigh the evidence. Monsour Med. Ctr. v. Heckler, 806 F.2d 1185, 1190-91 (3d Cir. 1986). The court's review is plenary as to the ALJ's application of legal standards. Krysztoforski v. Chater, 55 F.3d 857, 858 (3d Cir. 1995).

Although Mast contends that the ALJ "failed to give adequate weight to the opinions and findings" of Dr. Salvage, Pl.'s Br. at 5, Dr. Salvage did not render any opinions pursuant to the Social Security regulations. The regulations provide that, "[m]edical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [the claimant's] impairment(s), including [his or her] symptoms, diagnosis and prognosis, what [he or she] can still do despite impairment(s), and [his or her] physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2).[3] Here, Mast only cites to Dr. Salvage's treatment notes and examination findings, but not to any opinion on which the ALJ should have relied. Dr. Salvage never opined on Mast's functional limitations or what activities

---

[3] Some of the applicable regulations have been revised since the ALJ issued a decision in this case. Specifically, the definition of "medical opinions" contained in 20 C.F.R. § 404.1527(a)(2) of the prior regulation is now found in 20 C.F.R. § 404.1527(a)(1) in the revised regulation. Although the revised regulation may be worded slightly differently, the changes have no effect on the outcome of this case.

4

he could or could not perform in a work setting. Dr. Salvage's records consist primarily of clinical notes and do not contain "opinions" as defined in the regulations. Therefore, the ALJ was not required to assign these records any weight as an opinion. See White v. Berryhill, No. 17-10, 2018 WL 585555, at *4 (W.D. Pa. Jan. 29, 2018); Blumenstein v. Berryhill, No. 3:16-CV-2492, 2017 WL 7790206, at *6 (M.D. Pa. Nov. 15, 2017) ("[T]reatment notes, standing alone, d[o] not constitute a medical opinion under the pertinent Social Security regulations."), report and recommendation adopted, No. 3:16-CV-2492, 2018 WL 1035765 (M.D. Pa. Feb. 23, 2018).

Nevertheless, contrary to Mast's assertion that the ALJ failed "to give adequate weight" to the evidence from Dr. Salvage, the ALJ properly considered and discussed Dr. Salvage's treatment records and cited them as evidence, where appropriate, including to show that Mast's physical limitations were less debilitating than alleged. As the ALJ summarized, Mast was diagnosed with lumbar displaced disc, lumbar spondylosis, lumbar stenosis, and post-laminectomy syndrome. R. at 19 (citing id. at 503-49). Dr. Salvage's treatment notes described Mast as a "long-standing patient of [his] practice" who was "under care for chronic pain due to adjacent segment spinal disease [resulting from] a work-related injury [in] 2001." Id. at 508. According to Dr. Salvage's notes, Mast required a lumbar spinal fusion as a result of that workplace injury. Id. Dr. Salvage managed Mast's medication since 2007 "for many years supplementing him with spinal interventions, as the need warrants." Id. at 517; see also id. at 774. Importantly, Dr. Salvage noted that, during this period, Mast "has continued to work full time." Id. at 508. The ALJ also noted that, despite his back pain, Mast continued to work through November 2014, when he stopped due to necrotizing fasciitis, which required hospitalizations and nine surgeries to close the wound. Id. at 20 (citing id. at 294-445, 550-634).

The infected wound, however, eventually "closed off and healed." Id. at 774; see also id. at 751. To address his back pain, Mast continued to receive treatment from Dr. Salvage through 2017. Id. (citing id. at 503-49 and id. at 774-87). As the ALJ summarized, treatment notes in 2017 showed that Mast continued with chronic pain syndrome and post-laminectomy syndrome; however, in March 2017, he had a minimally antalgic gait. Id. (citing id. at 774-87). In June 2017, Dr. Salvage noted that Mast was alert and oriented without psychomotor retardation, had a well-healed laminectomy scar, and no gross motor weaknesses. Id. at 774. While the record includes clinical notes from Dr. Salvage that the ALJ comprehensively discussed, Dr. Salvage did not offer an opinion identifying any functional work-related limitations that affected Mast.

In contrast, the ALJ considered, evaluated, and ultimately gave great weight to the state agency opinion. Id. at 20. The state agency physician, Henry Weeks, Ph.D., opined that Mast could occasionally lift and/or carry up to 20 pounds and frequently lift and/or carry up to 10 pounds. Id. at 61. He also found that Mast could stand and/or walk for a total of six hours in a workday and sit for a total of six hours in a workday. Id. Dr. Weeks determined that Mast had certain postural limitations, which included only occasionally climbing ramps or stairs, never climbing ladders, ropes or scaffolds, and occasionally balancing, stooping, kneeling, crouching, and crawling. Id. at 62. In support of these limitations, Dr. Weeks cited to medical records dated December 4, 2015, which showed a "normal physical exam." Id. In particular, these medical records revealed that Mast's gait was essentially normal, he could walk on his toes but not his heels, he could only squat half way due to his obesity, his right groin was totally healed with fibrous tissue, his straight leg raise test was negative, his joints were stable and non-tender, he had no trigger points or sensory deficits, his strength was 5/5 in his upper and lower extremities, he had no muscle atrophy, and his grip strength was 5/5. Id. Dr. Weeks concluded

that Mast was limited to light work and consequently, was not disabled. Id. at 64. The ALJ found that this opinion was "fully consistent with treatment notes and objective testing that show the claimant is able to perform a range of light work." Id. at 20.[4]

Ultimately, the ALJ determined that, "[w]hile there is no doubt that the claimant was limited by his back impairment and slight residuals from his necrotizing fasciitis, the medical record indicates that the claimant is able to perform the above range of light work" outlined in the RFC. Id. The ALJ sufficiently explained the reasons for this finding and that conclusion is supported by substantial evidence. Zaccaria v. Comm'r of Soc. Sec., 267 F. App'x 159, 161 (3d Cir. 2008); Williams v. Barnhart, 87 F. App'x 240, 242 (3d Cir. 2004).

---

[4] The ALJ also fully considered the December 4, 2015 consultative opinion of Dr. Craig Haytmanek, but decided to give it little weight, determining that "the substantive report of Dr. Haytmanek is consistent with the medical record[,] [h]owever, the residual functional capacity is an overestimate of his functional ability." R. at 20. Dr. Haytmanek completed a Medical Source Statement of Ability to Do Work-Related Activities (Physical). Id. at 755-60. He opined that Mast could frequently lift and carry 21 to 50 pounds and occasionally carry 51 to 100 pounds. Id. at 755. He found that Mast could sit for four hours, stand for eight hours, and walk for eight hours at one time without interruption, and that he could sit for four hours, stand for eight hours, and walk for eight hours total in an eight-hour workday. Id. at 756. Dr. Haytmanek opined that Mast could continuously reach, handle, finger, feel, push, and pull with his right and left hands, and that he could continuously operate foot controls with his right and left feet. Id. at 757. Dr. Haytmanek determined that Mast could frequently climb stairs, ramps, ladders, and scaffolds, balance, and stoop; he could occasionally kneel and crouch; but he could never crawl. Id. at 758. With respect to environmental limitations, Dr. Haytmanek indicated that Mast could continuously tolerate exposure to unprotected heights; moving mechanical parts; operating a motor vehicle; humidity and wetness; dust, odors, fumes, and pulmonary irritants; extreme cold; extreme heat; and vibrations. Id. at 759. Moreover, Mast could perform activities like shopping; travel without a companion for assistance; ambulate without using a wheelchair, walker, or two canes or two crutches; walk a block at a reasonable pace on rough or uneven surfaces; use standard public transportation; climb a few steps at a reasonable pace with the use of a single handrail; prepare a simple meal and feed himself; care for personal hygiene; and sort, handle, and use paper and files. Id. at 760.

7

## IV. **CONCLUSION**

For the reasons set forth above, I find that the ALJ's findings are supported by substantial evidence. Accordingly, Plaintiff's request for review is DENIED. An appropriate Order follows.

Dated: April 26, 2019

BY THE COURT:

*/s/ Marilyn Heffley*
MARILYN HEFFLEY
UNITED STATES MAGISTRATE JUDGE